UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RICHARD G. MARR,

        Plaintiff,

        v.                                            Case No. 10-C-0658

BANK OF AMERICA, N.A.
as successor to Countrywide Bank, N.A. and
Countrywide Bank FSB, and DOES 1-5,

        Defendants.

v.

SUMMIT TITLE SERVICE, LLC,

        Third Party Defendant.

---

DECISION AND ORDER DENYING BANK OF AMERICA N.A.'S MOTION FOR SUMMARY JUDGMENT (DOC. 17)

       In 2007, plaintiff Richard Marr took out two loans six months apart. Several years later, his attorney reviewed the loan folders and informed him that he did not receive the requisite federal disclosures for his loan refinancing. Marr filed two cases in this district under the Truth-in-Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.* The first case, which involved Marr's February 2007 loan, was dismissed by U.S. District Judge J.P. Stadtmueller on summary judgment. *Marr v. Bank of America, N.A.,* Case No. 09-C-228 (E.D. Wis.). The Seventh Circuit reversed and remanded that case on the ground that a genuine issue of material fact existed. *Marr v. Bank of America, N.A.*, 662 F.3d 963 (7th

Cir. 2011). The second case involves the August 2007 refinancing, and comes before this court on defendant Bank of America N.A.'s motion for summary judgment. Because the briefing and factual disputes in the two cases are virtually identical, the court will adopt the reasoning of the Seventh Circuit Court of Appeals and deny defendant's motion.

FINDINGS OF FACT

The parties have stipulated to the following facts. Plaintiff Richard G. Marr ("Marr") purchased a home located at 173 N. 121 Street, Wauwatosa, WI 53226 (hereinafter "the Property") in 1974 for $25,000. (Vidal Decl. ¶ 2, Ex. A at 7.) In February of 2007, Marr closed on a loan from Countrywide Bank, N.A. ("Countrywide") in the amount of $195,000.00. (Vidal Decl. ¶ 3, Ex. B, p. 19-20; Ex. C at 1.) Alpine Financial ("Alpine"), a mortgage broker, contacted Marr about refinancing his mortgage. (Vidal Decl. ¶ 2, Ex. A at 9.) In August of 2007, Marr refinanced with Countrywide in the amount of $213,750.00. (Vidal Decl. ¶ 5, Ex. D.) Summit provided closing services for the August 2007 loan. (Vidal Decl. ¶ 6, Ex. E.)

Specifically, on August 6, 2007, Latricia Noblin (n/k/a Latricia Love), a Summit closing agent, attended the closing of the August 2007 loan. (Vidal Decl. ¶ 6, Ex. E.) Love had at least a year of experience as a closing agent before the August 2007 loan closing. (Vidal Decl. ¶ 7, Ex. F at 120.) Additionally, Love had at least two and a half years of experience with real estate closing documents prior to the August 2007 loan closing. (Id.)

The closing took place at an office adjacent to Alpine's offices in West Allis, Milwaukee. (Vidal Decl. ¶ 2, Ex. A at 9.) Only Marr and Love attended the closing. (Id.) After Marr had the opportunity to review the document and ask questions, Love handed Marr another copy of the loan document, which Marr signed and handed back to her.

2

(Vidal Decl. ¶ 7, Ex. F at 110.) Marr signed and dated a copy of the NORTC acknowledging that he received two copies of the NORTC. (Vidal Decl. ¶ 2, Ex. A at 18; see also Vidal Decl. ¶ 10, Ex. I.) At the end of the closing, Love gave Marr a folder for his set of loan documents. (Vidal Decl. ¶ 2, Ex. A at 21.) Marr admits that he did not review his set of documents at any time on the day of the closing. (*Id.* at 20.)

In the pending case as well as the case before Judge Stadtmueller, Marr alleges he did not receive two copies of the notice of right to rescind. (Compl. ¶¶ 1, 12, 21; Vidal Decl. ¶ 4, Ex. C.) In the case before Judge Stadtmueller, Marr testified that after the closing of the February 2007 Loan, he placed the folder of documents he received at the closing into an unlocked filing cabinet in his dining room where he kept all of his important paperwork, including bills and bank statements. (Vidal Decl. ¶ 3, Ex. B at 32-33.) He did not review the contents of the February 2007 loan folder before placing it into the bottom drawer of the filing cabinet. (*Id.* at 35.) Marr submits that his February 2007 loan folder remained undisturbed until he took it to his attorney's office almost two years after the closing of the February 2007 loan. (*Id.* at 34.) Marr learned for the first time from his attorney that his February 2007 loan folder allegedly contained insufficient disclosures. (Vidal Decl. ¶ 2, Ex. A at 33-34.)

After the closing at issue in this case, Marr placed the August 2007 loan folder into the same drawer of the unlocked filing cabinet as the February 2007 loan folder. (Vidal Decl. ¶ 2, Ex. A at 21-22.) Marr maintains that the August 2007 loan folder was undisturbed. (Compl.; Vidal Decl. ¶ 4, Ex. C.)

Marr moved the August 2007 loan folder to bring it to his attorney's office. (Vidal Decl. ¶ 2, Ex. A at 42.) As with the February 2007 loan folder, Marr first learned from his

attorneys that the August 2007 loan folder contained an insufficient number of disclosures. (*Id*. at pp. 33, 39-40.)

After Marr filed the current lawsuit, counsel for Bank of America requested that Marr produce a full and complete copy of the contents of the August 2007 loan folder he claims was undisturbed and only contained one copy of the notice of right to rescind. (*Id.* at 44-45; Vidal Decl. ¶ 12, Ex. K.) Several documents that Marr signed at the closing were not in Marr's August 2007 loan folder. (Vidal Decl. ¶ 2, Ex. A at 58-59.) Moreover, the Identity Affidavit was not the first document in Marr's allegedly undisturbed folder. *(Id*. at 50-52, 60; Vidal Decl. ¶ 13, Ex. L; Vidal Decl. ¶ 16, Ex. O.)

Marr sent Bank of America a letter seeking rescission of the February 2007 loan. (Vidal Decl. ¶ 14, Ex. M.) On March 11, 2010, Marr sent Bank of America a second letter seeking rescission of the August 2007 Loan. (Vidal Decl. ¶ 15, Ex. N.) Bank of America denied the rescission requests for both loans. (Compl.; Vidal Decl. ¶ 4, Ex. C.)

## CONCLUSIONS OF LAW

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the motion, the court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). Indeed, the "non-moving party does not bear the burden of proving his case; the opponent of summary judgment need only point to evidence that can be put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor. *Marr,* 662 F.3d at 965.

4

TILA requires lenders "clearly and conspicuously" to make a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction. 15 U.S.C. §§ 1601(a), 1635(a). Regulation Z implementing TILA requires a lender to give the consumer two copies of the notice of the three-day right to rescind at closing. 12 C.F.R. § 226.23(b)(1). Failure to comply with this rule extends the time to rescind from three days to three years. 12 C.F.R. § 226.23(a)(3)

Marr asserts he received one copy of the notice and not two. He admits he signed the document titled "Notice of Right to Cancel" and that directly above his signature is a line that reads "The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement." (Marr Dep. 18-19.) In addition, Love, the closing agent, testified that she always provided borrowers with required notices and copies of everything they signed and never gave borrowers documents out of order. Several documents in Marr's August 2007 loan folder were out of order.

At the same time, Love admitted that she had no independent recollection of Marr or his closing. (Love Dep. 116.) Marr testified in his deposition that the closing agent placed two piles of documents in front of her and had Marr sign the original. (Marr Dep. 66.) At the end of the closing Marr had a stack of documents that he placed in the folder provided by the closing agent. He believes he did not receive copies of all of the documents he signed at the closing and that he received one copy of the notice of right to rescind. (Marr Dep. 10, 69.)

Marr set the folder on his passenger seat, drove home, and placed the folder in the bottom drawer of his four drawer, steel, non-locking filing cabinet. (Marr Dep. 22-23.)

According to Marr, he never took anything out of the folder. Marr first learned that there may be a problem with his loan after receiving a letter from his attorney. (Marr Dep. 40.) After visiting his attorney about the February 2007 loan, he returned home to look in his August 2007 folder. (Marr Dep. 41.) Marr put all of the documents back into the loan folder, does not remember changing the order, and no one else reviewed the file. (Marr Dep. 71.) He took the August 2007 loan folder to his attorney and learned within 24 hours that there was an insufficient number of disclosures. (Marr Dep. 44.)

On virtually identical facts in the first case brought by Marr, the Seventh Circuit held that Marr's evidence is enough to permit a reasonable jury to find in his favor:

> Marr left the closing agent's office on February 23 with the loan documents in the folder that the title company had given him. He put that folder into his filing cabinet. He added additional loan documents to the folder later on, but he never removed anything from the folder. When he took the folder to his attorney's office, he and the attorney discovered that there was only one copy of the Notice. If believed, this evidence is enough to rebut the presumption created by Marr's acknowledgment that he received two copies of the Notice. We note, finally, that although the difference between one and two copies may seem to be an empty formality, Regulation Z demands two copies. This is not a situation in which there is any room for some kind of substantial compliance rule. Two copies means two copies, not one. *See* 12 C.F.R. § 226.23(b)(1). Marr is entitled to the opportunity to convince the trier of fact that he did not receive all that the Regulation promised him, and thus that he may proceed with his suit to rescind the loan.

*Marr*, 662 F.3d at 965.

Admittedly, Marr presented an affidavit in Case No. 09-C-228 averring that his experience at the February 23 closing deviated from the standard practices and procedures described by the closing agent in her affidavit. Yet even without a similar affidavit in the pending case, Marr and Bank of America have conflicting evidence as to whether the closing agent provided Marr with two copies of the notice of his right to rescind

6

and whether the contents of the August 2007 loan folder remained undisturbed. Construing the evidence in the light most favorable to Marr, the nonmoving party, and based on the recent Seventh Circuit decision in *Marr v. Bank of America, N.A. v. Summit Title Services, LLC*,

IT IS ORDERED that defendant Bank of America, N.A.'s motion for summary judgment is denied.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE